IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVONTAY CONNER,
a/k/a "Mojo,"
a/ka/ "Tay,"

   *Petitioner*,

v.

UNITED STATES OF AMERICA,
   *Respondent*.

Criminal No.: ELH-22-0305
Related Civil No. ELH-25-0870

## MEMORANDUM OPINION

On March 14, 2025, pursuant to 28 U.S.C. § 2255, defendant Davontay Conner filed a motion to vacate his conviction under 18 U.S.C. § 924(c), which was, in turn, predicated on Hobbs Act robbery. ECF 71 (the "Motion"). Defendant relies on the Supreme Court's decision in *United States v. Davis*, 588 U.S. 445 (2019), which was decided several years before defendant was charged in this case. There, the Supreme Court extended its holding in *Johnson v. United States*, 576 U.S. 591 (2015), construing the Armed Career Criminal Act, to invalidate the analagous residual clause in § 924(c) as unconstitutionally vague. Defendant also asks for a lawyer. ECF 71 at 6.[1]

The government opposes the Motion as untimely. ECF 73. Alternatively, the government urges the Court to deny the Motion on the ground that the *Davis* claim has been procedurally defaulted. Even if properly preserved, however, the government also contends that the claim lacks merit.

Defendant did not reply. And, the time to do so has expired.

---

[1] Defendant has ably set forth the grounds for his Motion. Therefore, I see no basis to appoint a lawyer for him at this time.

No hearing is necessary. *See* 28 U.S.C. § 2255(b). For the reasons that follow, I shall deny the Motion.

## I.    Factual and Procedural Background

In 2022, a grand jury in the District of Maryland charged Conner with (1) Hobbs Act conspiracy, under 18 U.S.C. § 1951(a) and § 2 (Count One); (2) Hobbs Act robbery, under the same statutes (Count Two); and (3) using, carrying, and brandishing a firearm, during and in relation to a crime of violence, *i.e.*, Hobbs Act robbery, as set forth in Count Two of the Indictment, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and § 2 (Count Three). *See* ECF 1.

On October 23, 2023, pursuant to a Plea Agreement (ECF 49), Conner pled guilty to Hobbs Act conspiracy (Count One) and to the § 924(c) offense (Count Three). ECF 48. He did not make a *Davis* claim before pleading guilty. The plea was entered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a total sentence ranging from 84 to 120 months of imprisonment. ECF 49, ¶ 89.

The Plea Agreement included a stipulation as to the facts. *Id.* at 10-11. The agreed facts established that on October 13, 2019, at about 4:20 p.m., Baltimore Police responded to a robbery at RK Jewelers inside the Mondawmin Mall in Baltimore. The stipulation provides, in part, *id.*:

> During the robbery, investigators learned that a glass display was broken, and four masked men entered the store with guns, held up the security guard at gunpoint, and robbed the store. The robbers attempted to get the security guard's weapon out of the holster but were unsuccessful.
>
> While the other three robbers were holding up the security guard, the Defendant, Davontay Conner ("Conner"), used a hammer to smash a display case, reached into the case and stole seven (7) Rolex diamond watches from the case and put the watches into a pink backpack that Conner was carrying. The total value of the Rolex watches that were taken is $263,000.00. The watches were manufactured in Switzerland, and therefore affect interstate commerce. Conner and his co-conspirators conspired to steal the Rolex watches.
>
> The suspects then fled the store, with one suspect firing a round back

2

toward the store. Conner, along with the other three co-conspirators escaped into an awaiting SUV and another shot was fired from inside the vehicle, breaking the rear window, leaving glass in the parking lot.

Investigators recovered a casing and fragment inside the mall near the front door of RK Jewelers. A blood trail was also found in the path of the escape route and a report from MD State Police Forensic Sciences Division indicated a match between DNA from the blood sample and DNA on file for Davontay Conner. The DNA confirmed that Conner matched the DNA swabs of all three locations that were collected along the exit path from RK Jewelers to the getaway vehicle.

Later in the evening, on the same day, October 13, 2019 at 9:39 p.m., BPD located a 2006 Infinity FX35 (Maryland Tag 78268CD) that matched the getaway vehicle with the rear window shot out.

Investigators also recovered phones connected to Conner and executed search warrants on his phone. Investigators learned that geographic location data points for October 13, 2019 placed Conner's phone at Mondawmin Mall approximately forty-five minutes before the robbery took place. No other location data points for October 13, 2019 were listed on the report.

Additionally, investigators also executed search warrants on Conner's lnstagram accounts and identified a communication on October 16, 2019, three days after the robbery. During the communication, Conner was believed to be discussing that he stole "rollies" at "Rk jeweler".

Sentencing was held on February 1, 2024. ECF 68. The Court sentenced defendant to a total term of 110 months' imprisonment: 26 months for the Hobbs Act conspiracy and the mandatory 84 months, consecutive, for the § 924(c) offense. Judgment was entered on February 2, 2024. ECF 69 (Judgment).

Conner did not note an appeal. Therefore, his conviction became final on February 16, 2024. *See* Fed. R. App. 4(b)(1)(A).

On March 14, 2025, the Court received Conner's § 2255 Motion. There, he raised his *Davis* claim for the first time. ECF 71.

## II. Legal Standards

### A. 18 U.S.C. § 924(c)

Section 924(c) of 18 U.S.C. punishes a person who, *inter alia*, uses, carries, or brandishes a firearm in relation to "any crime of violence" or a "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A)(ii). The statute defines a "crime of violence" in two ways. Under the so called "residual clause," a crime of violence means a felony offense that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). The other way, under the "force clause," requires that the offense has "as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A).

In June 2019, the Supreme Court decided *Davis*, 588 U.S. at 445. There, it held that the residual clause is unconstitutionally vague. But, in *United States v. Taylor*, 596 U.S. 845, 856-57 (2022), the Court confirmed the validity of the force clause. And, in *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019), the Fourth Circuit deermined that Hobbs Act robbery satisfies the force clause. *Id.* at 266. Therefore, for § 924(c) purposes, Hobbs Act robbery qualifies as a "crime of violence." All of these decisions preceded defendant's guilty plea in October of 2023.

### B. 28 U.S.C. § 2255(a)

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *see also United States v. Hodge*, 902 F.3d 420, 426

(4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Relief under § 2255 is meant to remedy fundamental constitutional, jurisdictional, or other errors. It is reserved for situations in which failure to grant relief "'inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill,* 368 at 428).

Under § 2255, the petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). But, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Addonizio*, 442 U.S. at 185 (quoting *Hill*, 368 U.S. at 428). In order to prevail on a § 2255 motion, a defendant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

Of relevance here, 28 U.S.C. § 2255(f) imposes a one-year period of limitations, within which a petitioner must file a post-conviction motion. This one-year period begins on the latest of the following dates: (1) the date on which the petitioner's judgment became final; (2) the date on which any unconstitutional, government-created impediment preventing the petitioner from filing this motion was lifted; (3) the date on which a newly asserted right was recognized by the Supreme Court and made retroactive on collateral review; or (4) the date on which the facts supporting the petitioner's claim for relief "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)-(4); *see, e.g.*, *United States v. Green*, 67 F.4th 657, 663 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 226 (2023); *United States v. Brown*, 868 F.3d 297, 301 (4th Cir. 2017).

The scope of collateral review under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). "Accordingly, at least as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." *Foster*, 578 U.S. at 519 (citing, *inter alia*, *United States v. Roane*, 378 F.3d 382, 397 n.7 (4th Cir. 2006)). Indeed, "it is well-settled that [a defendant] cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion.'" *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)) (ellipsis in *Dyess*); *see United States v. Caro*, 733 F. App'x 651, 659 (4th Cir. 2018) (same).

Failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999)); *see United States v. Green*, 67 F.4th 657, 666 (4th Cir. 2023); *Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *Linder*, 552 F.3d at 397.

Generally, the rule governing procedural default of claims brought under § 2255 precludes consideration of any contentions that "'could have been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains.'" *Pettiford*, 612 F.3d at 280 (quoting *Mikalajunas*, 186 F.3d at 492–93). Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see Dretke*, 541 U.S. at 393; *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see also Reed*, 512 U.S. at 354 (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Carrier*, 477 U.S. at 496; *Frady*, 456 U.S. at 167-68.

In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded their counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, the alleged error cannot simply create a possibility of prejudice; the petitioner must show "*actual* and substantial disadvantage" that "infect[s]" the petitioner's "entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Pursuant to the Supreme Court's ruling in *Carrier*, 477 U.S. at 494, prejudice does not support relief of a procedural default in the absence of a showing of cause. *See also Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). Indeed, it must be "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Carrier*, 477 U.S. at 496.

To show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623; *Green*, 67 F.4th at 671. Notably, the petitioner must meet this burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583; *see Bousley*, 523 U.S. at 623.

As the Fourth Circuit has said, "[a] valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

However, failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro*, 538 U.S. at 509; *see United States v. Faulls*, 821 F.3d 502, 507–08 (4th Cir. 2016). Indeed, such claims ordinarily are not litigated on direct appeal. Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010). Rather, such claims are usually litigated in a § 2255 action to allow for development of the record. *Massaro*, 538 U.S. at 504-06; *United States v. Ladson*, 793 F. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).

Moreover, a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021) (same); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *see United States v. LeMaster*, 403 F.3d 216, 220–23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Ordinarily, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim . . . ." *Mayhew*, 995

9

F.3d at 176-77. If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020); *see also United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

In my view, there are no credibility issues here. No hearing is necessary.

### C. Guilty Plea

As noted, defendant entered a plea of guilty on October 23, 2023, to the offenses of Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951(a), and use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). In the context of a post-conviction petition, a guilty plea is significant.

A guilty plea represents an admission by a defendant that "he actually committed the crime" in issue and that "he is pleading guilty because he is guilty." *United States v. Hyde*, 520 U.S. 670, 676 (1997). A guilty plea also constitutes a "waiver of [a defendant's] right to trial before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). It is "a grave and solemn act . . . ." *Id.*; *see also Bousley*, 523 U.S. at 618.

Thus, to be valid, the plea of guilty must reflect an "intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Moreover, in order for a guilty plea to be valid, it must be voluntary. *Brady*, 397 U.S. at 748. And, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.*; *see Bradshall v. Stumpf*, 545 U.S. 175, 183 (2005) (same). Once a guilty plea is entered, however, there is "a strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.3d 1389, 1394 (4th Cir. 1992).

10

The plea bargaining process is regarded as "an essential aspect of the administration of criminal justice . . . ." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011).  Thus, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson*, 397 U.S. 749, 771 (1970); *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019); *United States v. Hall*, 771 App'x 226, 227 (4th Cir. 2019) (per curiam); *see also Frye*, 566 U.S. at 140-44; *Lafler*, 566 U.S. at 162.

When, as here, a judgment of conviction based upon a guilty plea is later subjected to a collateral attack, such as by a § 2255 petition, the court's inquiry concerning the validity of the guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).  A plea cannot be "voluntary in the sense that it constituted an intelligent admission . . . unless respondent received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  But, in *Marshall v. Lonberger*, 459 U.S. 422 (1983), the Court recognized that "'it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.'" *Id.* at 436 (1983) (quoting *Henderson*, 426 U.S. at 647) (internal quotations omitted).

A "valid guilty plea relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary guilty plea." *Class v. United States*, 583 U.S. 174, 183 (2018); *see United States v. Pittman*, 125 F.4th 527, 533 (4th Cir. 2025) (stating that "[a] criminal defendant who pleads guilty waives any argument that the statute of conviction does not cover that defendant's conduct.").  Indeed, a defendant is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney*

11

*Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Thus, "a defendant's solemn declarations in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity.'" *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74); *see United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1992) (stating that defendant's statements at the plea hearing are "strong evidence of the voluntariness of his plea.").

To be sure, the Supreme Court has said that "a guilty plea by itself does not bar" a defendant from claiming that "the statute of conviction" is unconstitutional, thereby "call[ing] into question the Government's power to constitutionally prosecute him." *Class*, 583 U.S. at 176, 181-82 (2018); *see Pittman*, 125 F.4th at 530. But, *Class* is "limited to 'constitutional' claims." *Pittman*, 125 F.4th at 530 (citations omitted).

Conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222. As the Fourth Circuit has explained, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Id.*; *see also Blackledge,* 431 U.S. at 74; *White*, 366 F.3d at 295-96; *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

Moreover, the Fourth Circuit has acknowledged that, on post-conviction, a defendant who has pled guilty "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *United States v. Murillo*, 927 F.3d 808, 815 (2019); *cf. Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's

remorse, from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 927 F.3d at 816.

In particular, the defendant "must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.*; *see United States v. Perdue*, 110 F.4th 662, 670 (4th Cir. 2024). In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815; *see Garrett Co. v. DePasquale*, 443 U.S. 368, 382 n.10 (1979); *United States v. Hashimi*, 110 F.4th 621, 627 (4th Cir. 2024). Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence." *Id.* And, the "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22; ECF 45-1 at 38-39.

Here, defendant does not "point to evidence" that undermines his knowing and voluntary decision to plead guilty based on a complete "understanding of the implications of pleading guilty . . . ." *Perdue*, 110 F.4th at 670.

### III.   Discussion

#### A.

The government contends that Conner's Motion was untimely filed. As noted, 28 U.S.C. § 2255(f) establishes a one-year period of limitations, within which a petitioner must file a post-conviction petition. This one-year period begins on the latest of the following dates: (1) the date on which the petitioner's judgment became final; (2) the date on which any unconstitutional, government-created impediment preventing the petitioner from filing this motion was lifted; (3) the date on which a newly asserted right was recognized by the Supreme Court and made retroactive on collateral review; or (4) the date on which the facts supporting the petitioner's claim

for relief "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)-(4).

Judgment was entered in this case on February 2, 2024. ECF 69. Defendant's time to note a direct appeal expired on February 16, 2024. *See* Fed. R. App. Pro. 4(b)(1)(A)(i). Defendant did not note an appeal to the Fourth Circuit. Therefore, the one-year period to file for post-conviction relief commenced on February 16, 2024. In other words, defendant had one year from February 16, 2024, to file his post-conviction petition. *See* 28 U.S.C. § 2255(f). But, defendant's Motion was not filed until March 14, 2025.

Conner argues that his Motion was filed beyond the deadline because he was in State custody and did not have "resources for federal law work," so he waited to file until he was in federal custody. ECF 71 at 4. In effect, Conner asks the Court to apply the doctrine of equitable tolling.

Under *Holland v. Florida*, 560 U.S. 631 (2010), "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is available in "those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (applying equitable tolling to one-year limitation period in 28 U.S.C. § 2255) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)) (additional citations omitted); *see United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

Notably, a petitioner need show only "reasonable diligence." There is no requirement for "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citation omitted). But, defendant has failed to "explain how he exercised diligence during the original limitations period." *Smith v. Warden of FCI Bennettsville*, JRR-22-3340, 2023 WL 3251411, at *5 (D. Md. May 4, 2023).

Conner's explanation does not satisfy the criteria for tolling the one-year clock. For example, he does not claim that the government impeded his ability to file, § 2255(f)(2); that the Supreme Court recognized a new, retroactive right, § 2255(f)(3); or that he discovered new facts through due diligence, § 2255(f)(4). Indeed, defendant does not allege that he was diligently pursuing his rights while in State custody. He does not allege that he tried to access federal legal materials in State custody or that he tried to seek legal assistance while there. Nor does he describe his efforts once he entered federal custody.

According to the government, BOP records indicate that Conner entered federal custody on December 11, 2024, *i.e.*, two months before the § 2255 deadline, and he arrived at his current facility (FCI Cumberland) on January 21, 2025, nearly four weeks before the § 2255 deadline. ECF 73 at 5; *see* Inmate History, ECF 73-1. Conner does not explain why this time was insufficient to file his Motion.

Moreover, even for a defendant without legal counsel, "ignorance of the law is not a basis for equitable tolling." *Sosa*, 364 F.3d at 512. Courts have declined to toll the deadline simply because a defendant was in state custody during the limitations period and lacked access to adequate federal legal resources. *See*, *e.g.*, *United States v. Barfour*, 7:10cr0069-1, 2020 WL 2090676, at *3 (W.D. Va. Apr. 30, 2020); *Mebane v. United States*, 1:11cr301-2, 2016 WL 3573105, at *2 (M.D.N.C. May 4, 2016).

In sum, Conner does not explain how his presence in State custody thwarted his efforts to file a timely motion. The Motion is time barred and subject to dismissal on this basis.

**B.**

Alternatively, the government argues that, even if the Motion were timely filed, Conner's claim under *Davis* is procedurally defaulted, because he failed to raise the claim during his pretrial proceedings or on direct appeal. To excuse the default, defendant must show "cause" for the default and "prejudice" resulting from it, or he must demonstrate that he is "actually innocent." *Green*, 67 F.4th at 666 (citing *Bousley*, 523 U.S. at 622).

Conner does not discuss the matter of procedural default. But, as the government puts it, "Even if he did, no prong can be met." ECF 73 at 6.

Defendant cannot show cause because the *Davis* decision was readily available to him long before he entered a guilty plea. *See Bousley*, 523 U.S. at 622 (finding no cause because, "at the time of petitioner's plea, the Federal Reporters were replete with cases" considering the same argument). Indeed, as noted, *Davis* was decided in 2019, several years before Conner was even charged in this case. Nor can Conner rely on the fact that *Mathis* and *Green* would have made his *Davis* claim futile, given that they had already been decided by the time Conner pled guilty. *See Bousley*, 523 U.S. at 623 (explaining that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time") (citation and internal quotation marks omitted).

Moreover, Conner cannot show prejudice because *Mathis* and *Green* squarely foreclose his *Davis* claim, and he offers no reason to depart from those cases. In the guilty plea context, Conner must show that, "had he known of the error," he "would not have pled guilty to the count of conviction." *Green*, 67 F.4th at 668. To establish prejudice, a defendant must show that the error

16

"'worked to his *actual* and substantial disadvantage.'" *Untied States v. McKinney*, 60 F.4th 188, 195 (4th Cir. 2023) (quoting *Frady*, 456 U.S. at 170) (emphasis in *Frady*).

When, as here, a defendant "collaterally attacks a § 924(c) conviction solely on the ground that a predicate offense is invalid after *Davis*," he "cannot show prejudice if the predicate qualifies as a crime of violence under the [force] clause." *Green*, 67 F.4th at 668. And, *Mathis* and *Green* clearly establish that Hobbs Act robbery constitutes a crime of violence under the force clause of § 924(c). As the Fourth Circuit has said, its "precedents establish that Hobbs Act robbery is a crime of violence" under the force clause in § 924(c). *Green*, 67 F.4th at 671.

Nor can Conner show actual innocence. To establish actual innocence, Conner must show "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623; *see Green*, 67 F.4th at 671. In other words, he must show that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *United States v. Harris*, 183 F.3d 313, 318 (4th Cir. 1999) (citing *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)) (internal quotation marks omitted). Conner offers no factual basis to challenge the evidence supporting his otherwise valid § 924(c) conviction. *See*, *e.g.*, *Harris*, 183 F.3d at 318 (no actual innocence where the defendant "points to no evidence that gives rise to the inference that the gun belonged to anyone other than [him] or that anyone other than [him] would have carried the gun to the hotel room").

## C.

Defendant's Motion is untimely. But, even if it were timely, it lacks merit. Therefore, I shall dismiss and deny the Motion.

### IV.     Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post-conviction claim.

A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100, 115 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003).

As indicated, a COA may issue only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Defendant has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.[2]

An Order follows.

Date:  December 19, 2025                            /s/
                                                    Ellen L. Hollander
                                                    United States District Judge

---

[2] The denial of a COA by the district court does not preclude defendant from seeking a COA from the appellate court, *i.e.*, the United States Court of Appeals for the Fourth Circuit.